FILED

2023 MAY 11 PM 3: 04

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

IN RE: MATTER OF THE APPLICATION OF B&C KB HOLDING GMBH FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM THE TEACHER RETIREMENT SYSTEM OF TEXAS

Case No.

**1:23MC00529** **RP**

## APPLICATION FOR AN ORDER TO TAKE DISCOVERY
## PURSUANT TO 28 U.S.C. § 1782

B&C KB Holding GmbH ("B&C" or "Applicant") respectfully seeks an Order from this Court pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing it to serve subpoenas for documents and testimony on the Teacher Retirement System of Texas ("Respondent").

### INTRODUCTION

1.      B&C seeks evidence for use in a criminal investigation currently pending in Austria (the "Criminal Investigation"). The Criminal Investigation centers on suspicion of aggravated fraud, manipulation of financial statements, and other criminal misconduct by former executives at European-based Schur Flexibles group of companies ("Schur Flexibles Group" or "Schur"), which induced B&C to acquire a controlling interest in Schur at an artificially inflated price.

2.      Respondent is found in this District and is believed to possess information that is relevant to, and that B&C can use in, the Criminal Investigation.

3.      By way of background, on September 30, 2021, B&C purchased from Atlas Flexibles Coöperatief U.A. ("AF Coop") and Lindsay Goldberg Europe GmbH ("LGE" and together with AF Coop, the "LG Sellers") an 80% ownership interest in the Schur Flexibles Group (the "Sale") for a base purchase price of approximately EUR 258.4 million (approximately US

$300 million) and other consideration (the "Sale Proceeds").  Declaration of Thomas Zimpfer ("Zimpfer Decl.") ¶¶ 5-7.

4.      After the Sale, beginning in late December 2021, B&C discovered severe irregularities at Schur, including evidence that the EBITDA (earnings before interest, taxes, depreciation and amortization) reflected in Schur's consolidated financial statements for 2018 through 2020 was materially overstated, such that B&C's equity investment was, in reality, worthless when B&C acquired Schur and paid the Sale Proceeds.  Declaration of Dr. Michael Rohregger ("Rohregger Decl.") ¶¶ 7-8.

5.      Respondent is believed to be a limited partner in one or more investment funds (the "LG Funds") that hold a controlling interest in AF Coop, which was Schur's majority owner until it sold a controlling stake to B&C through the Sale.  Declaration of Zachary D. Rosenbaum ("Rosenbaum Decl.") ¶ 6-15 & Exs. D-F.  The LG Funds are believed to be managed by Goldberg Lindsay & Co. LLC ("Lindsay Goldberg"), a New York-based private equity firm, or its affiliates. *Id.*

6.      As a limited partner in the LG Funds, Respondent is expected to possess communications regarding its investment in the LG Funds, which would likely include information concerning the reported value of Schur, as well as the efforts by Schur's former owners to sell a controlling interest in it to B&C.  Zimpfer Decl. ¶ 17.  This information is relevant to the Criminal Investigation.  Rohregger Decl. ¶ 42.  Respondent is also expected to have received a portion of, or have information concerning, Sale Proceeds paid by B&C, including the present whereabouts of monies it received.  Zimpfer Decl. ¶ 17.  This information is likewise relevant to the Criminal Investigation.  Rohregger Decl. ¶ 43.  Proceeds procured by criminal fraud can potentially be seized and subjected to forfeiture under Austrian law. *Id.*

7.    The Criminal Investigation is focused on several former Schur executives as well as Thomas Unger ("<u>Unger</u>")—who was Managing Partner of LGE (one of the LG Sellers) and Chair of the Advisory Board of Schur Flexibles Holding GesmbH ("<u>SF Holding</u>")—on suspicion of aggravated fraud in the Sale to B&C, among other crimes. Rohregger Decl. ¶¶ 21 & 32.

8.    The state police supporting the Austrian Prosecutor have conducted searches of the homes of three former Schur executives and are conducting interviews of various Schur Flexibles Group employees and other persons. Rohregger Decl. ¶ 26.

9.    The Austrian Prosecutor has also sent formal notices to the suspects in the Criminal Investigation, informing them that they are being investigated, among other things, on suspicion of aggravated fraud. Rohregger Decl. ¶¶ 29-31, 36, Exs. 3, 4, 5, and 7.

10.    The notice to LGE's Unger, for example, states in part:

> There is the suspicion . . . that you as former Chairman of the Advisory Board of the Austrian Schur Flexibles Group of Companies and Managing Partner of Lindsay Goldberg Europe GmbH, were involved in balance sheet manipulations concerning the annual financial statements 2018 to 2020 and in so doing, in conscious and deliberate collaboration . . . with [the three Schur executives] at dates in 2021 yet to be determined, with the intent to unlawfully enrich yourself or a third party through the conduct of the deceived, induced B&C KB Holding GmbH through deception about facts, namely about the true economic circumstances of Schur Flexibles Holding GesmbH, to commit an act, namely to pay an excessive purchase price for shares in the latter, which detrimentally affected the assets of B&C KB Holding GmbH in an amount yet to be determined, in any case exceeding EUR 300,000.00.

Rohregger Decl., Ex. 7.

11.    The Austrian Prosecutor has served a summons on Unger, among others, commanding their interrogation as part of the Criminal Investigation in the coming weeks. Rohregger Decl. ¶¶ 37-38 & Ex. 8.

12.     Additionally, the Austrian state police has begun interviews of certain B&C personnel to aid in its development and understanding of information.  These interviews were originally initiated by the Austrian Prosecutor to progress the Criminal Investigation. Rohregger Decl. ¶ 39.

13.     The information sought from Respondent is narrowly tailored to the subject matter of its investment in LG Funds that ultimately held a controlling interest in Schur, its knowledge and communications about that investment, and its receipt of proceeds from that investment.  As such, the subpoenas that B&C seeks to serve on Respondent are limited to six categories of documents and seven topics of testimony. Rosenbaum Decl., Exs. A & B.

14.     As a victim of the crimes being investigated, B&C has the status of a private party to the Criminal Investigation (*Privatbeteiligter*).  B&C has submitted evidence in the Criminal Investigation and has the right under Austrian criminal procedures to submit the evidence Respondent produces in response to its subpoenas to the Austrian Prosecutor conducting the Criminal Investigation—and B&C intends to do so.  Rohregger Decl. ¶ 40; Zimpfer Decl. ¶ 21. Likewise, the Austrian Prosecutor is obligated under Austrian law to consider the evidence submitted by B&C. Rohregger Decl. ¶ 41.

15.     As discussed in the accompanying Memorandum of Law, this application satisfies each of the statutory elements under Section 1782, and all of the discretionary factors courts consider favor granting the application.

16.     The United States District Court for the Southern District of New York, moreover, in February 2023 granted a related Section 1782 application that B&C brought in July 2022, seeking evidence for use in the Criminal Investigation from Lindsay Goldberg and managing partner Michael Dees ("Dees"). Rosenbaum Decl., Ex. I.  B&C served the subpoenas that

accompanied that Section 1782 application on Lindsay Goldberg and Dees as authorized by the court. Lindsay Goldberg and Dees have objected to the court's decision under Federal Rule of Civil Procedure 72, which objection is *sub judice*. To date, Lindsay Goldberg and Dees have not produced any documents or given testimony in response to the subpoenas. Rosenbaum Decl. ¶ 17.

17.    For the reasons discussed further herein and in the accompanying Memorandum of Law, B&C respectfully requests that the Court grant this Application.

## JURISDICTION AND VENUE

18.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782(a). Venue in this District is proper under 28 U.S.C. § 1391 because Respondent resides or is found in this District.

## APPLICANT AND RESPONDENTS

### I.    Applicant

19.    B&C is a private company located in Vienna, Austria. Zimpfer Decl. ¶ 3. B&C is indirectly wholly owned by B&C Privatstiftung, an Austrian private foundation whose purpose is to promote Austrian entrepreneurship. *Id.*

20.    On May 15, 2021, B&C agreed to acquire an 80% interest in the Schur Flexibles Group from the LG Sellers. Zimpfer Decl. ¶ 4. The transaction closed on September 30, 2021 and, on that day, the LG Sellers received the Sale Proceeds by wire transfer directed to a bank account in Chicago, Illinois.[1]  *Id.* ¶¶ 5-6.

---

[1] Specifically, B&C acquired an 80% interest in Atlas Flexibles GmbH ("Atlas"), which, in turn, owned 100% of Schur Flexibles GmbH ("SF"). SF directly owned 100% of Schur Flexibles Holding GesmbH (defined above as "SF Holding"). SF Holding directly or indirectly holds majority interests in numerous other subsidiaries and affiliates. Atlas and its subsidiaries and affiliates collectively will be referred to as the "Schur Flexibles Group." The base purchase price was EUR 258.4 million (approximately US $300 million). B&C paid additional consideration to

21.     Eight months after the Sale, on June 4, 2022, B&C had to agree to turn over all of its shares and shareholder loans in the Schur Flexibles Group to certain of Schur's creditors through a restructuring transaction that, upon information and belief, was necessitated by conduct that is the subject of the Criminal Investigation. Zimpfer Decl. ¶ 17. The restructuring transaction closed on September 28, 2022. *Id.* Consequently, at present, B&C has suffered a loss of virtually its entire investment in Schur plus additional costs and harms. *Id.* ¶ 17-18.

22.     As mentioned above, B&C has submitted evidence in the Criminal Investigation and has the right and intends to submit additional evidence in the Criminal Investigation. Rohregger Decl. ¶ 40; Zimpfer Decl. ¶ 21.

## II.    Respondent

23.     Respondent, the Teacher Retirement System of Texas, upon information and belief, maintains its principal place of business at 1000 Red River Street, Austin, Texas 78701.[2] Rosenbaum Decl. ¶ 4 & Ex. C.

24.     Upon information and belief, Respondent is a limited partner of one or more of the LG Funds advised by Lindsay Goldberg or its affiliates and such LG Funds hold a controlling interest in AF Coop (one of the LG Sellers). Rosenbaum Decl. ¶ 6-15 & Exs. D-F.

25.     Specifically, according to data published by *Bloomberg*, in July 2016, Lindsay Goldberg Fund III L.P. ("LG Fund III"), a limited partnership organized under the laws of the State of Delaware, acquired an ownership interest in the Schur Flexibles Group for an undisclosed amount. Rosenbaum Decl. ¶ 10 & Ex. E.

---

complete the acquisition, including a EUR 19.3 million (approximately US $22.5 million) shareholder loan and certain reimbursement payments. Zimpfer Decl. ¶¶ 5-7.

[2] *See* [Form 13-F]; https://www.trs.texas.gov/Pages/about_contacts_us.aspx

26.    Further, according to *Bloomberg*, Lindsay Goldberg Fund IV L.P. ("LG Fund IV") a limited partnership organized under the laws of State of Delaware, sold an 80% ownership interest in the Schur Flexibles Group to B&C in a deal that ascribed an enterprise value to Schur of EUR 900 million (US $1.09 billion).  Rosenbaum Decl. ¶ 14 & Ex. G.

27.    Also, according to *Bloomberg*, Respondent is an investor in LG Fund III and LG Fund IV, with committed capital of $250 million to each such fund.  Rosenbaum Decl. ¶ 9, 12, Exs. E & F.[3]

28.    Consequently, upon information and belief, Respondent holds a limited partnership interest in LG Fund III and LG Fund IV which, in turn, were indirect owners of Schur and recipients of Sale Proceeds received from B&C.

29.    Respondent is not a known suspect in the Criminal Investigation.  Rohregger Decl. ¶ 44.

## FACTUAL SUMMARY

30.    Below is a summary of the relevant facts, which are alleged upon information and belief, including (but not limited to) based upon evidence that has been received by B&C through its position as a private party to the Criminal Investigation (*Privatbeteiligter*) and reports resulting from (i) an internal compliance review conducted by Alvarez & Marsal Disputes and Investigations GmbH ("A&M"), starting in January 2022, (ii) an analysis of accounting issues conducted by KPMG Austria ("KPMG"), also starting in January 2022, and (iii) a forensic

---

[3] A table of investors in both LG Fund III and LG Fund IV, as published by *Bloomberg*, is appended as Exs. E and F to the Rosenbaum Decl.  B&C is filing substantially similar Section 1782 applications to the one here, directed to other limited partners who are invested in both LG Fund III and LG Fund IV.

accounting analysis conducted by KPMG, starting in May 2022 (together, the "Post-Acquisition Investigations").

31.    As private party to the Criminal Investigation (*Privatbeteiligter*), B&C has submitted evidence to the Austrian Prosecutor for use in the Criminal Investigation and will continue doing so.  Rohregger Decl. ¶ 40; Zimpfer Decl. ¶ 19.

## I.    Lindsay Goldberg Acquires the Schur Flexibles Group and Later Markets It for Sale

32.    On July 25, 2016, Lindsay Goldberg announced that investment funds it manages agreed to acquire the Schur Flexibles Group, a leading manufacturer of flexible packaging products in Europe across a range of end markets including meat and cheese, confectionary, pharmaceutical specialties, and tobacco.[4]

33.    Lindsay Goldberg is believed to have brought about that acquisition through AF Coop (then named Atlas Flexibles B.V., later Atlas Flexibles Coöperatief U.A.) and LGE (then named Lindsay Goldberg Vogel GmbH, later Lindsay Goldberg Europe GmbH).  Zimpfer Decl. ¶ 11.

34.    Specifically, Lindsay Goldberg manages the LG Funds, which held controlling interests in AF Coop.  AF Coop and LGE were the owners of Atlas Flexibles GmbH (Atlas). Zimpfer Decl. ¶¶ 8-9, 12.

35.    In February 2017, Unger joined LGE as a Managing Partner and, in addition, became a member of the Advisory Board of SF Holding later that year.  Rohregger Decl. ¶ 17(a).

---

[4] *See* Lindsay Goldberg Press Release, *Lindsay Goldberg Acquires Schur Flexibles Group* (Jul. 25, 2016), https://www.lindsaygoldbergllc.com/wp-content/uploads/2019/04/lindsay-goldberg-acquires-schur-flexibles-group.pdf (last accessed on May 11, 2023).

Unger had previously been CEO of another major flexible packaging manufacturer headquartered in Vienna, Austria, named Constantia Flexibles Group GmbH ("Constantia"). *Id.*

36.    Shortly thereafter, three other individuals left Constantia and joined SF Holding: (i) Michael Schernthaner ("Schernthaner") became the Chief Financial Officer of SF Holding in Spring 2017 and was promoted to CEO in Spring 2019; (ii) Michael Fischkin ("Fischkin") became Senior Finance Manager of SF Holding in Spring 2017 and was promoted to Group Finance Director in Summer 2019; and (iii) Conny Stöhrer ("Stöhrer") joined SF Holding in Spring 2017 and was promoted to Head of Group Controlling and Reporting in Fall 2019. Rohregger Decl. ¶ 17(a). Unger, Schernthaner, Fischkin and Stöhrer are now amongst the suspects in the Criminal Investigation. *Id.*

37.    According to a statement that Schernthaner made in an April 2022 pleading in a judicial proceeding that SF Holding brought against him in Austria, when he first came to Schur in 2017, the company was "an der Kippe zur Insolvenz" (*i.e.*, Schur was, according to Schernthaner "on the verge of insolvency"). Rohregger Decl. ¶ 24. That pleading has been provided to the Austrian Prosecutor. *Id.*

38.    In October 2017, Schernthaner sought to replace Schur's auditor, Ernst & Young ("EY"). Rohregger Decl. ¶ 17(e). Schernthaner recommended that EY be replaced by PwC, with Horst Bernegger ("Bernegger") acting as relationship partner. *Id.* Schernthaner had previously worked with Bernegger, as PwC had been the auditor of Constantia. *Id.* Unger approved PwC's appointment as auditor of Schur. *Id.*

39.    Although Schernthaner now states that the company was on the verge of insolvency when he joined Schur in Spring 2017, Schur's consolidated financial statements for 2018 indicated

that its consolidated EBITDA had grown from approximately EUR 32.7 million in 2017 to approximately EUR 73 million in 2018. (Zimpfer Decl. ¶ 18).

40.     Subsequently, in its consolidated financial statements for 2019, Schur stated an EBITDA of approximately EUR 82.8 million, and in its consolidated financial statements for 2020, Schur stated an EBITDA of approximately EUR 78.8 million. Rohregger Decl. ¶ 19(b) (ii) – (iii).

41.     Throughout his tenure, Unger had a close working relationship with Schernthaner and often engaged in management decisions, becoming effectively a co-leader rather than just fulfilling his supervisory duties as a member of the Advisory Board. Rohregger Decl. ¶ 17(b). For example, as was uncovered as part of the Post-Acquisition Investigations, from mid-2017 through 2021, Unger and Schernthaner exchanged more than 4,500 e-mails, an average of four e-mails per day, with 2,500 of those being without anyone else copied and often from private rather than company e-mail addresses. Rohregger Decl. ¶ 17(c). Furthermore, sometime in early 2020, a decision was evidently made (presumably by Unger and Schernthaner) to discontinue documentation of all meetings and decision-making of the Advisory Board of SF Holding (for which Unger served as a member and on which Lindsay Goldberg Managing Partner Dees served as a member from, upon information and belief, January 2017 to September 2021). Rohregger Decl. ¶ 17(d); Zimpfer Decl. ¶ 13.

42.     In late 2019 and early 2020, Lindsay Goldberg made a first attempt to sell the LG Sellers' interest in the Schur Flexibles Group. Rohregger Decl. ¶ 17(f). Upon information and belief, Lindsay Goldberg referred to that plan to exit as "Project Sky" and marketed the Schur Flexibles Group to a number of market participants, including B&C. *Id.*

43.     Evidence that B&C later obtained through the Post-Acquisition Investigations shows that Unger and LGE Director Paul Pruss ("Pruss") were actively involved in discussions

with Schernthaner and representatives of Schur's financial advisor for transactions relating to the Schur Flexible Group's financials at the time.  Rohregger Decl. ¶ 17(g).  Each of them gave Schernthaner detailed instructions on how to present and adjust the Schur Flexibles Group's EBITDA, in contravention of the company's bylaws (which stipulate that the Advisory Board should only "consult and support," not instruct).  *Id.*

44.    In January 2020, shortly before completion of the sales process, a final bidder withdrew and the sale was aborted.  Rohregger Decl. ¶ 17(h).

45.    After the failed sale, Unger and Pruss continued to give Schernthaner detailed instructions regarding EBITDA.  Rohregger Decl. ¶ 17(i).  Evidence shows that Unger even created spreadsheets with EBITDA calculations and sent them to Schernthaner on at least three occasions, in December 2019, September 2020 and December 2020.  *Id.*  In one instance, the file was passed back and forth between the two, with Schernthaner incorporating specific changes requested by Unger, and Unger modifying Schernthaner's figures. *Id.*

46.    In the meantime, in an instant message on April 30, 2020 between two of the criminal suspects, Stöhrer (Schur's former Head of Group Controlling) complained to Fischkin (Schur's former Group Finance Director) about an auditor at PwC being a "*pain in the ass*", to which Fischkin responded:

> Maybe we tell Michael Dees to slip him some more money.  He [Dees] thinks it's always possible.

Rohregger Decl., Ex. 1.

47.    Similarly, in an instant message Fischkin sent to Stöhrer on April 23, 2021, Fischkin stated, "you cannot tell the truth if you do not make a profit, but rather burn cash… […] after all, everybody believes that the EBITDA is real…." Rohregger Decl., Ex. 2.

## II.    B&C Acquires the Schur Flexibles Group from LGE and AF Coop

48.     Lindsay Goldberg began to market the Schur Flexibles Group for sale by the LG Sellers again in early 2021. In January 2021, Unger and Schernthaner, through the mediation of Bernegger, PwC's relationship partner, contacted a board member of B&C Privatstiftung in order to negotiate a sale of the majority shares in the Schur Flexibles Group. Rohregger Decl. ¶ 17(j).

49.     Unger, Schernthaner, and other representatives of the LG Sellers courted B&C with a proposal for an agreement that initially resulted in an exclusive acquisition opportunity instead of a traditional merger and acquisition (M&A) auction. Rohregger Decl. ¶ 17(k). In return, the LG Sellers required that there be a fast-track acquisition process with an expedited due diligence period. *Id.*

50.     Additionally, Unger emphasized that Schernthaner was of central importance to the deal and to an eventual initial public offering and that it would be better not to annoy him with any inquiries, because otherwise, there was a risk that he would block the acquisition by B&C or leave the company. Therefore, the organization within the Schur Flexibles Group seemed to be strongly tailored to Schernthaner, who in turn, regularly coordinated with Unger as a member of the Advisory Board. Rohregger Decl. ¶ 17(l).

51.     In spring 2021, B&C made a non-binding offer for Schur. Rohregger Decl. ¶ 17(m). On May 15, 2021, B&C agreed to acquire the Schur Flexibles Group from LGE and AF Coop by entering into a Share Purchase Agreement (the "SPA"). Rohregger Decl. ¶ 17(n).

52.     On September 30, 2021, B&C and the LG Sellers closed the Sale. Zimpfer Decl. ¶ 5. Pursuant to the SPA, as consideration for the Sale, B&C paid a base purchase price of EUR 258.4 million (approximately US $300 million). B&C paid additional consideration to complete

the acquisition, including a EUR 19.3 million (approximately US $22.5 million) shareholder loan and certain reimbursement payments. Zimpfer Decl. ¶¶ 5-7.

53.     As noted above, the Sale Proceeds were wired to an account in the name of AF Coop located in Chicago, Illinois. *Id.*

### III.    Large-Scale Irregularities are Uncovered at the Schur Flexibles Group

54.     After the Sale, beginning in late December 2021, B&C discovered indications of misconduct at Schur, which led to the Post-Acquisition Investigation. Rohregger Decl. ¶ 7.

55.     On or about December 21 and 22, 2021, Schernthaner, Fischkin and Stöhrer, respectively, were terminated from their employment with the Schur Flexibles Group. *Id.* And, ultimately, the Post-Acquisition Investigations revealed in the ensuing months evidence that Schur's EBITDA in the consolidated financial statements for 2018 through 2020 was materially overstated, an alleged misappropriation of company assets by Schernthaner and Fischkin, and improper consulting agreements with evidence that Schernthaner may also have received kickbacks. *Id.*

56.     Specifically, in January 2022, two firms, KPMG and A&M were commissioned to investigate. Rohregger Decl. ¶ 8. KPMG and A&M made findings, which are alleged in greater detail in the Austrian and German criminal complaints as well as through additional information submitted to the Austrian Prosecutor. The findings of the A&M report and the interim KPMG report, among other information, support the following allegations under Criminal Investigation:

a.     The Schur Flexibles Group's consolidated financial statements for 2018, 2019 and 2020 did not reflect the true financial situation. For example, the consolidated financial statements for 2018 stated that 2018 EBITDA was approximately EUR 73 million, but according to KPMG's interim report the actual 2018 EBITDA was

approximately EUR 23.9 million; the consolidated financial statements for 2019 stated that 2019 EBITDA was approximately EUR 82.8 million, but according to KPMG the actual 2019 EBITDA was approximately EUR 15.9 million; and the consolidated financial statements for 2020 stated that 2020 EBITDA was approximately EUR 78.8 million, but according to KPMG the actual 2020 EBITDA was approximately EUR 33.2 million. Rohregger Decl. ¶¶ 19(b)(i)-(iii).[5]

b.    KPMG identified the following categories of problematic accounting entries:

   i.   Unjustified capitalization of fixed assets;

   ii.  Unjustified capitalization of inventories and receivables;

   iii. Offsets to the parent company without a documented legal basis;

   iv.  Unjustified reclassification of expense in the income statement to areas outside the operating result;

   v.   Miscellaneous other entries (*e.g.*, new entry of business transactions already recorded in the individual Group companies). Rohregger Decl. ¶¶ 19(c)(i)-(v).

c.    For example, when expenses were improperly recorded as capital expenditures instead of operating expenses, those transactions made EBITDA appear artificially high.    Operating expenses are deducted from income and therefore reduce EBITDA.    However, because capital expenditures do not affect EBITDA, mischaracterizing operating expenses as capital expenditures artificially inflates

---

[5] In September 2022, Schur restated its 2020 financial results in the consolidated financial statements for 2021, which were audited by its new auditor, Deloitte-Austria. Those audited results show that the actual EBITDA for 2020 was even lower. These audited financials and other EBITDA findings have been provided to the Austrian Prosecutor as part of the Criminal Investigation. Rohregger Decl. ¶ 19(b)(iii) n. 2.

EBITDA. This, in turn, along with other problematic accounting entries caused the inflated purchase price, which was calculated by using an EBITDA multiple. Rohregger Decl. ¶ 19(d).

d.    A&M found strong indications that the tender process, in which PwC was selected as successor to the prior auditor Ernst & Young, was manipulated. Rohregger Decl. ¶ 19(e). For example, there is no evidence that Ernst & Young submitted a bid or that KPMG was considered. *Id.* Thus, PwC was the only bidder. *Id.*

e.    In 2021, Schernthaner and Fischkin misappropriated several million Euros from SF Holding. Rohregger Decl. ¶ 15(b).

f.    In 2021, Schernthaner and Fischkin entered into leases for two luxury apartments at Mayfair House in London for personal use and caused SF Holding to pay deposits of GBP 280,000 and GBP 104,000, and rents for one year of GBP 1,820,000 and GBP 676,000, payable in advance, without any business purpose or justification. Because the leases can probably not be terminated until November 30, 2023, SF Holding may suffer damages of several million Euros out of these leases. Rohregger Decl. ¶ 15(c)(i).

g.    In 2021, Schernthaner and Fischkin entered into contracts with vendors to furnish and hire staff for the Mayfair House apartments, for their personal use, and caused SF Holding to spend the equivalent of EUR 1,662,411 without justification or authority. Rohregger Decl. ¶ 15(c)(ii).

h.    From 2019 to 2021, Schernthaner, Fischkin and Stöhrer were overpaid several million Euros in compensation without justification or authority. Rohregger Decl. ¶ 15(d).

i.      From 2017 to 2021, Schernthaner (sometimes with the countersignature of Fischkin) entered into multiple questionable consultancy contracts with vendors. Rohregger Decl. ¶ 15(e). In the case of certain vendors, there is evidence that Schernthaner may have received kickbacks. *Id.* As a result of the payments on the improper contracts, SF Holding suffered damages of several million Euros. *Id.*

57.    The information outlined above in Sub-Paragraphs (a) through (i) was not disclosed to B&C prior to its acquisition of an 80% equity interest in the Schur Flexibles Group. Rohregger Decl. ¶¶ 16, 18, 20.

## IV.    The Criminal Investigation

58.    In March 2022, SF Holding's counsel filed with the Zentrale Staatsanwaltschaft zur Verfolgung von Wirtschaftsstrafsachen und Korruption (Central Public Prosecutor's Office for the Prosecution of Economic Crimes and Corruption) ("WKStA" or "Austrian Prosecutor") a criminal complaint dated March 2, 2022, and several addenda (including addenda dated March 8, 2022 and March 31, 2022). Rohregger Decl. ¶ 9. This criminal complaint contained the factual allegations summarized in Paragraph 56(e) – (j) above. Rohregger Decl. ¶¶ 15(a)-(e). The WKStA opened an investigation on March 9, 2022. Rohregger Decl. ¶ 9.

59.    The Austrian Prosecutor shortly thereafter froze approximately EUR 1.4 million of assets possessed by Schernthaner and a company beneficially owned by him, as well as assets of Fischkin. Rohregger Decl. ¶ 10.

60.    On April 29, 2022, B&C filed a criminal complaint with the Staatsanwaltschaft Düsseldorf (the Düsseldorf Public Prosecutor's Office) in Düsseldorf, Germany (where LGE is located). Rohregger Decl. ¶ 11. This criminal complaint was filed on suspicion that Unger, who lives in Germany, committed aggravated fraud in connection with the sale as well as other crimes.

*Id.* This criminal complaint contained the factual allegations summarized in Paragraph 56(a) – (j) above. Rohregger Decl. ¶¶ 17(a)-(n). The Düsseldorf Public Prosecutor's Office opened an investigation. Rohregger Decl. ¶ 11.

61.     On July 13, 2022, B&C filed a criminal complaint with the WKStA. Rohregger Decl. ¶ 12. The Austrian Prosecutor thereafter expanded its investigation against certain former Schur executives to include charges of aggravated fraud in addition to the already existing charges of, amongst others, manipulation of financial statements at SF Holding and breaches of fiduciary duties (a.k.a breach of trust). *Id.* This criminal complaint contained the factual allegations summarized in Paragraph 56(a) – (c) above. Rohregger Decl. ¶¶ 19(a)-(e).

62.     According to Sect. 50 of the Austrian Code of Criminal Procedure ("CPP") the Austrian Prosecutor must notify every individual if he/she starts (or extends ongoing) investigations against the individual. Rohregger Decl. ¶ 28.

63.     Pursuant to that requirement, on September 2, 2022, the Austrian Prosecutor sent notices to each of Schernthaner, Fischkin and Stöhrer, stating that they were being investigated on suspicions of aggravated fraud, among other crimes, arising from the accounting manipulations:

> Due to newly emerged circumstances, there is a suspicion that you … in conscious and deliberate collaboration (Section 12 of the StGB) … with the intent to unlawfully enrich yourself or a third party through the conduct of the deceived, by deceiving B&C KB Holding GmbH about facts, namely about the true economic situation of Schur Flexibles Holding GesmbH, induced B&C KB Holding GmbH to act, namely to pay an excessive purchase price for shares in this company, which damaged the assets of B&C KB Holding GmbH in an amount yet to be determined that in any case exceeds EUR 300,000.00.

Rohregger Decl., Exs. 3-5.

64.     In September 2022, B&C learned that, in light of the overlap of the Austrian and German investigations, the German Public Prosecutor's Office intended to transfer its investigation against Unger to the Austrian Prosecutor. Rohregger Decl. ¶ 32.

65.     On November 25, 2022, the Austrian Prosecutor notified the German Prosecutor that it had accepted the request to take over the criminal investigation against Unger. Rohregger Decl. ¶ 33 & Ex. 6.

66.     Also on November 25, 2022, the Austrian Prosecutor sent a similar notice under Sect. 50 of the Austrian CPP to Unger that he was being investigated on suspicions of aggravated fraud, among other crimes, arising from the accounting manipulations:

> There is the suspicion . . . that you as former Chairman of the Advisory Board of the Austrian Schur Flexibles Group of Companies and Managing Partner of Lindsay Goldberg Europe GmbH, were involved in balance sheet manipulations concerning the annual financial statements 2018 to 2020 and in so doing, in conscious and deliberate collaboration . . . with [the three Schur executives] at dates in 2021 yet to be determined, with the intent to unlawfully enrich yourself or a third party through the conduct of the deceived, induced B&C KB Holding GmbH through deception about facts, namely about the true economic circumstances of Schur Flexibles Holding GesmbH, to commit an act, namely to pay an excessive purchase price for shares in the latter, which detrimentally affected the assets of B&C KB Holding GmbH in an amount yet to be determined, in any case exceeding EUR 300,000.00.

Rohregger Decl., Ex.7.

67.     The Austrian Prosecutor has also recently served a summons on Unger, among others, commanding their interrogation as part of the Criminal Investigation in the coming weeks. Rohregger Decl., Ex. 8.

68.     As noted above, the Austrian state police, who is assisting the Austrian Prosecutor, has begun interviews of certain B&C personnel to aid in its development and understanding of

information. These interviews were originally initiated by the Austrian Prosecutor to progress the Criminal Investigation. Rohregger Decl. ¶ 39.

69.     B&C will be able and intends to submit additional evidence to the Austrian Prosecutor for use in the Criminal Investigation. Rohregger Decl. ¶¶ 40-41; Zimpfer Decl. ¶ 19.

**V.     The Misconduct under Criminal Investigation has Caused Severe Losses to B&C**

70.     On June 4, 2022, as part of a restructuring transaction that became necessary after the conduct under Criminal Investigation was discovered and the Schur Flexibles Group's true financial condition became known, B&C had to agree to turn over all of its shares and shareholder loans in the Schur Flexibles Group to certain of Schur's creditors for virtually nothing (EUR 2). The restructuring transaction closed on September 28, 2022. Zimpfer Decl. ¶ 15.

71.     B&C's losses from the conduct under Criminal Investigation, inclusive of the Sale Proceeds plus other costs and expenses associated with its investment in Schur and from the fallout from the alleged fraud, are several hundred million Euros. Zimpfer Decl. ¶ 16.

**VI.     The United States District Court for the Southern District of New York Grants B&C's Section 1782 Application Seeking Permission to Serve Subpoenas on Lindsay Goldberg and Michael Dees**

72.     On July 14, 2022, B&C filed an application seeking an order from the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1782 authorizing it to serve subpoenas for documents and testimony on Lindsay Goldberg and Dees. Case No. 1:22-mc-00180-LAK-VF (S.D.N.Y.).     Lindsay Goldberg and Dees opposed the application. Rosenbaum Decl. ¶ 16.

73.     On February 6, 2023, the court granted the application. United States Magistrate Judge Valerie Figueredo (who was referred the motion) held that B&C's application satisfies the statutory requirements under Section 1782, including that B&C is an "interested person" under

Section 1782 and that the discovery requested by B&C is "for use" in a foreign proceeding. The court also held that B&C's application satisfies Section 1782's discretionary factors, which all weigh in favor of granting the application. Rosenbaum Decl., Ex. I.[6]

74.    B&C thereafter issued subpoenas to Lindsay Goldberg and Dees, in the form submitted by B&C with its application and approved by the court in that proceeding. Dees and Lindsay Goldberg have objected to the grant of the application under Federal Rule of Civil Procedure 72. The objection is fully briefed but has not yet been decided. To date, Lindsay Goldberg and Dees have not provided any documents or testimony in response to the subpoenas. Rosenbaum Decl. ¶ 17.

## VII.    B&C Is Permitted to Submit Evidence in the Austrian Criminal Proceedings.

75.    The Austrian Criminal Investigation has passed the initial stage at which the Prosecutor must determine whether an initial suspicion ("Anfangsverdacht") exists. Rohregger Decl. ¶ 25.    The Austrian Criminal Investigation is in the active investigation stage ("Ermittlungsverfahren") and the state police searched the homes of Schernthaner, Fischkin and Stöhrer. Rohregger Decl. ¶ 26. If the investigation reveals that sufficient grounds for suspicion exist, the Prosecutor will be obligated to file charges against those under Criminal Investigation. Rohregger Decl. ¶ 27.

76.    Under Austrian criminal procedure, B&C is permitted to submit additional evidence to the Prosecutor in Austria, including evidence obtained through this proceeding

---

[6] Lindsay Goldberg and Dees contended, without evidence, that B&C's Section 1782 application in aid of the Criminal Investigation was purportedly "the most obvious of pretexts, designed to conceal its true intention—to obtain discovery in aid of its recently filed DIS [German Arbitration Institute] arbitration" against the LG Sellers. *See* Dkt. 24 at 2-3. But the court correctly rejected that argument. *See* Dkt. 44.

pursuant to Section 1782, and the Austrian Prosecutor is obligated to consider all such evidence submitted by B&C.  Rohregger Decl. ¶¶ 40-41.

## VIII.   Respondent Possesses Information that is Relevant to and will be Used in the Criminal Investigation

77.     As an investor in the LG Funds, Respondent is expected to have had communications with representatives of AF Coop and/or the LG Funds, Lindsay Goldberg, LGE, Dees or Unger about the Schur Flexibles Group, the Sale, and efforts by the LG Sellers prior to the Sale to B&C to sell Schur to other potential buyers.  This information is relevant to the Criminal Investigation.  Rohregger Decl. ¶ 42.

78.     As an investor in the LG Funds, Respondent is also expected to have received a portion of, or have information and communications concerning, the Sale Proceeds, including the present whereabouts of monies it received or benefitted from.  Zimpfer Decl. ¶ 17.

79.     As noted above, information concerning the Sale Proceeds is relevant to and can be used in the Criminal Investigation.  Further, under Section 20 through 20c of the Austrian Criminal Code, the Sale Proceeds paid by B&C can be subject to potential forfeiture as proceeds of an alleged crime.  Rohregger Decl. ¶ 43.

80.     The information requested in the proposed subpoenas directed to Respondent is expected to aid in identifying the circumstances and whereabouts of any Sales Proceeds it received or benefitted from as well as information regarding the acquisition, financial performance, and Sale of the Schur Flexibles Group.  Zimpfer Decl. ¶ 17.

81.     This information is relevant to the Criminal Investigation.  Rohregger Decl. ¶ 44.

## RELIEF REQUESTED

82.     By this Application, B&C seeks permission to gather evidence, including subpoenas for documents and depositions, from Respondent for use in the Criminal Investigation

into apparent aggravated fraud, manipulation of financial statements, breaches of fiduciary duties and other potentially criminal conduct at and surrounding the Schur Flexibles Group. B&C respectfully requests that the Court permit it to serve the subpoenas attached to the Rosenbaum Decl. as Exhibits A-B.

Dated:          May 11, 2023

                                        Respectfully submitted,

                                        **CLEVELAND | KRIST PLLC**

                                        Timothy Cleveland
                                        State Bar No. 24055318
                                        Gerard F. Bifulco
                                        State Bar No. 24130269
                                        303 Camp Craft Road, Suite 325
                                        Austin, Texas 78746
                                        512-689-8698
                                        tcleveland@clevelandkrist.com
                                        gbifulco@clevelandkrist.com

                                        Zachary D. Rosenbaum
                                                 (*pro hac vice* motion forthcoming)
                                        Leif T. Simonson
                                                 (*pro hac vice* motion forthcoming)
                                        zachary.rosenbaum@kobrekim.com
                                        leif.simonson@kobrekim.com
                                        KOBRE & KIM LLP
                                        800 Third Avenue
                                        New York, New York 10022
                                        T: +1 212 488 1200
                                        F: +1 212 488 1200

                                        *Attorneys for Applicant*
                                        *B&C KB Holding GmbH*