**United States District Court**
**Western District of Texas**
**Austin Division**

| | |
|---|---|
| IN RE MATTER OF THE APPLICATION OF B&C KB HOLDING GMBH FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM THE TEACHER RETIREMENT SYSTEM OF TEXAS | No. 1:23-MC-00529 |

### Teacher Retirement System of Texas's Motion to Quash

The Teacher Retirement System of Texas ("**TRS**") respectfully requests that the Court enter an order quashing the subpoenas to compel the production of documents and a deposition that B&C KB Holding GmbH ("**B&C**") issued to TRS under 28 U.S.C. § 1782 (the "**TRS Subpoenas**").

### Summary

The TRS Subpoenas should be quashed for four reasons.  First, TRS is a state agency with sovereign immunity and there is neither a waiver of sovereign immunity by TRS nor an abrogation of sovereign immunity by Congress consistent with the "clear statement rule" within the text of section 1782.  Accordingly, the TRS Subpoenas are barred by sovereign immunity, cannot be enforced, and must be quashed.

Second, even if B&C could circumvent TRS's sovereign immunity, B&C cannot use section 1782 to compel discovery from a state agency under the language of the statute.  Section 1782 applies only to "persons" and, under applicable Supreme Court precedent, a state agency cannot be construed as a "person" for the purpose of this statute.

Third, the TRS Subpoenas should be quashed under Rule 26 and Fifth Circuit law because they are disproportionate, duplicative, and unduly burdensome.  B&C seeks to compel the production of documents and testimony that it admits (i) it could obtain from its party opponents in pre-existing litigation, (ii) that TRS only could have received from those party opponents, and

(iii) is only necessary so that B&C may be able to identify facts that they could turn over to a criminal prosecutor in Austria. In other words, a fishing expedition. Accordingly, B&C cannot meet its burden of showing that its requests are proportional to the needs of the case and the benefits of production outweigh the burdens or expense of the proposed discovery from a third party.

Fourth, and finally, even if section 1782 applied, the TRS Subpoenas are improper under section 1782. As a threshold matter, B&C has not met its burden of showing that the discovery will in fact be used by the Austrian prosecutor. But in any event, even if the threshold "use" test is met, the Court is not required to compel discovery. Rather, the discretionary analysis established by the Supreme Court overwhelmingly favors quashing the TRS Subpoenas. These factors include: (i) the weak relationship between B&C and the Austrian criminal proceedings; (ii) the seemingly pretextual basis for discovery — to support its foreign arbitration proceeding by circumventing information gathering restrictions under the foreign arbitration proceedings, the limited rights of purported crime victims under Austrian law, and the United States law barring discovery in support of foreign arbitration proceedings; and (iii) the unduly burdensome and duplicative nature of the discovery requests.

If B&C wants information from TRS, it can request it like any other person under the Texas Public Information Act. It cannot, however, circumvent the law through use of a coercive federal judicial process against a Texas state agency.

### Statement of Facts

TRS is a state entity under the Texas Constitution that is charged with providing "benefits for persons employed in the public schools, colleges, and universities supported wholly or partly by the state." Tex. Const. Art. XVI, § 67(b); *see also* Tex. Gov. Code § 821.003. TRS manages

over $183 billion in assets on behalf of its beneficiaries. *See Teacher Retirement System of Texas Annual Comprehensive Financial Report 2022*, available at, https://www.trs.texas.gov/TRS%20Documents/acfr-2022.pdf. TRS is authorized to invest in a diverse portfolio of assets. Tex. Gov. Code § 825.301.

Relevant here, TRS invested into two private equity funds managed by an affiliate of Lindsay Goldberg (the "**LG Funds**"). Ex. A (Declaration of Eric Lang) ¶ 4. The LG Funds are structured as Delaware limited partnerships, in which TRS has purchased interests as a limited partner. *Id.* The LG Funds are wholly and exclusively controlled by the general partner, and, as a limited partner, TRS has no control or other authority to make any decisions or take any actions on behalf of the LG Funds. *Id.* at ¶ 5.

B&C alleges that it (i) entered into a purchase transaction with an entity related to the LG Funds — Lindsay Goldberg Europe GmbH ("**Lindsay Goldberg Europe**") — in which B&C acquired 80% of an Austrian packaging company for approximately $300 million (the "**Sale**") and (ii) believes it was defrauded in connection with the Sale. *See* Application of B&C KB Holding GmbH for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the "**Application**"), Dkt. 1, ¶¶ 3-4. B&C filed a private commercial arbitration against Lindsay Goldberg Europe over the Sale. *See B&C KB Holding GmbH v. Goldberg Lindsay & Co. LLC et al.,* No. 1:22-mc-00180-LAK-VF (S.D.N.Y. July 14, 2022) (the "SDNY Action"), ECF No. 24 at 10-11. B&C also referred the Sale to prosecutors in Austria for a criminal investigation into conduct of former employees of the Austrian company and an employee of Lindsay Goldberg Europe for their role in the Sale. Application ¶¶ 6-7, 60.[1]

---

[1] In *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2091 (2022), the Supreme Court expressly prohibited the use of § 1782 to obtain discovery in support of a foreign private

Separately, B&C filed an application for discovery under section 1782 against Lindsay Goldberg in the SDNY Action, which was referred to, and granted by, a magistrate judge. Application ¶¶ 16, 72-73.  Since the filing of the Application here, the district court in New York has overruled the objections filed by Lindsay Goldberg and allowed B&C to proceed with taking discovery in that forum.  SDNY Action, ECF No. 71.

While those objections were pending, however, B&C also filed section 1782 actions seeking discovery from four investors, including TRS, all of which were state pension funds, for the alleged purpose of requesting information to be turned over to Austrian prosecutors.  *See In re the Application of B&C KB Holding GmbH for an Order to Take Discovery Pursuant to 28 U.S.C. 1782 From the State of Wisconsin Investment Board*, No. 3:23-MC-6 (SLC), (W.D. Wisc. May 11, 2023); *In re Matter of the Application of B&C KB Holding GmbH for an Order to Take Discovery Pursuant to 28 USC § 1782 from New York State Common Retirement Fund*, No. 1:23-MC-0015 (DNH/CFH), (N.D.N.Y. May 11, 2023); *In re Matter of the Application of B&C KB Holding GmbH for an Order to Take Discovery Pursuant to 28 USC § 1782 from the Teachers' Retirement System of Louisiana*, No. 3:23-cv-00365 (M.D. La. June 19, 2023).  Each of these applications, including the TRS Subpoenas, (i) requests near-identical documents and testimony that is sought from Lindsay Goldberg in the SDNY Action; (ii) requests information that the retirement funds could only have obtained from Lindsay Goldberg and its affiliates; and (iii) requests information dating back to January 1, 2016.  *See* Exs. B (Document Subpoenas Comparisons), C (Deposition Subpoenas Comparisons), D (Document Subpoena to TRS), E (Deposition Subpoena to TRS).

---

arbitration.  The dispute over the subpoenas in the SDNY Action concerned whether B&C could use the existence of the Austrian criminal investigation to obtain discovery notwithstanding *ZF Automotive*.

**Motion to Quash Subpoenas**                                                                    **4**

In seeking discovery from TRS, B&C does not allege (i) how it can compel a state agency with sovereign immunity to respond to its subpoenas, (ii) what any of this has to do with TRS, or (iii) why B&C thinks it is necessary to obtain this third-party discovery from TRS, instead of its party opponent.  The only allegations of wrongdoing concern former employees from the Austrian company and an employee of Lindsay Goldberg Europe.  Across the 22-page Application and 14-page Motion in Support of the Application (Dkt. 2), the only reference to TRS is that B&C "believes" or "expects" (i) the LG Funds held an unspecified ownership interest related to the Austrian company that was sold and (ii) TRS may have communications or proceeds related to the Sale.  Application ¶¶ 5-6, 77-78.  B&C provides no explanation as to why B&C has these beliefs or expectations — it is merely a bald conclusion.

Indeed, a letter B&C's counsel filed in the SDNY Action confirms that the TRS Subpoenas are duplicative of the requests already filed against Lindsay Goldberg in the SDNY Action.  *See* SDNY Action, ECF No. 68 at 3.  B&C stated:

> [I]f the SDNY-Respondents were to produce the documents required under the SDNY subpoenas, then document discovery from the Non-SDNY Respondents might be limited, since B&C could work to avoid productions of duplicative communications between the SDNY-Respondents and Non-SDNY Respondents. . . . However, if anything, the SDNY-Respondents' resistance to discovery to date has the potential to increase not lessen the burden on the Non-SDNY Respondents.

*Id*.  As this admission reveals, B&C recognizes that to the extent TRS is in possession of any information that may be responsive to B&C's overbroad discovery requests, TRS would have received such information from the LG Funds.  *See also* Ex. A ¶¶ 6-7.

### Procedural History

B&C filed the Application *ex parte* on May 11, 2023.  Dkt. 1.  The Court entered an order granting the Application on May 16, 2023.  Dkt. 5.  Counsel for both parties held the conference required under LR CV-7(i) by telephone on July 11, 2023, and were unable to resolve the dispute.

**Argument**

I.     **Sovereign immunity bars the third-party subpoenas against TRS.**

      A.     **TRS has sovereign immunity.**

Sovereign immunity creates a jurisdictional bar prohibiting this action against TRS.  Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const., amend. XI.

It is well established that "sovereign immunity protects not only states from suit in federal court, but also arms of the state."  *U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (quotation omitted).  Under Fifth Circuit law, a court determining whether a state agency is entitled to sovereign immunity considers: (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local as opposed to statewide problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Id.* at 502 (citing *Clark v. Tarrant County*, 798 F.2d 736, 744–45 (5th Cir. 1986)).

Under this test, the Fifth Circuit held that it had "little trouble concluding that" similarly situated entities were arms of the state and entitled to sovereign immunity.  *Id.*  For example, in *U.S. Oil*, the Fifth Circuit held that a group of public university defendants were entitled to sovereign immunity because the entities were classified as state agencies under applicable Texas law, received appropriations from the state budget, were not subject to local autonomy, were concerned with statewide power and issues, and were subject to oversight by state officials.  *Id.*

The Fifth Circuit also rejected the plaintiff's proposition "that sovereign immunity does not protect an arm of the state when it engages in 'proprietary functions.'" *Id.*

Under the *Clark* test, other courts within this district have held that both (i) an agent of TRS and (ii) the Texas County and District Retirement System, another state employee retirement system created by the Texas Constitution, were entitled to Eleventh Amendment sovereign immunity. On the former, in *Kirby v. Health Care Serv. Corp.*, 88 F. Supp. 3d 717 (W.D. Tex. 2015), the court held that Blue Cross Blue Shield was entitled to Eleventh Amendment immunity when acting as an agent of TRS in administering its health care benefits program. *Id.* at 720-722. In doing so, the court held that the fact TRS was ultimately liable for payment of claims was a critical factor and the funds of the beneficiary trust were public funds equivalent to the state treasury for sovereign immunity purposes. *Id.* at 722. That is consistent with Fifth Circuit law holding that the presence of assets or indemnification with which to satisfy a judgment does not preclude the application of sovereign immunity. *See Clark*, 798 F.2d at 744. As the Fifth Circuit explained in *Clark*, "the fact a payment could come from tuition fees did not change the Eleventh Amendment bar because the fees were comingled with other monies of the university." *Id.*

On the latter, in *Tex. Cnty. & Dist. Ret. Sys. v. Wexford Spectrum Fund, L.P.*, 953 F. Supp. 2d 726 (W.D. Tex. 2013), the district court held that the Texas County and District Retirement System ("**TCDRS**"), another state retirement fund established by the Texas Constitution and the Texas Government Code like TRS, was entitled to assert sovereign immunity as an arm of the state. The court based that decision on (i) TCDRS's basis in the Texas Constitution, (ii) TCDRS's designation as a state agency under the Texas Governmental Code, (iii) TCDRS being subject to control by a Board of Directors appointed by the Governor of Texas, (iv) TCDRS being subject to state regulations governing public agencies, and (v) the consistent authority from state courts

holding that TRS is entitled to sovereign immunity for the same reasons.  *Id.* at 728-29 (citing *TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 321–22 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that TRS is entitled to assert sovereign immunity)).  Notably, similar to this action, the lawsuit in TCDRS concerned that retirement system's investment as a limited partner in an investment fund.  *Id.* at 727.

TRS cannot be meaningfully distinguished from TCDRS.  Just like TCDRS, TRS is an agency whose is existence is mandated by the Texas Constitution. Texas Const. art. XVI, § 67.  TRS is a government agency subject to the Texas Government Code.  *See* TRS Tex. Gov. Code chs. 821-830.  TRS is a "public entity," Tex. Gov. Code § 821.003, that is governed by a Board of Directors appointed by the Governor of Texas, who are officers of the state and must "take the constitutional oath prescribed for officers of the state."  Tex. Gov. Code §§ 825.002, 825.005.  TRS is also expressly designated as a state agency under the Texas Insurance Code and is subject to state regulations, including review by the State Pension Review Board.  Tex. Ins. Code § 1551.003(14); Tex. Gov. Code § 802.101(c).  As a state agency, TRS's meetings and board records are open to the public, Tex. Gov. Code §§ 825.107, 825.115, and TRS, as an agency, is subject to the Texas Public Information Act.  Tex. Gov. Code §§ 552.0225(b), 552.143.  TRS's funds are sourced from contributions from public entities and it is also subject to appropriations from the Texas legislature.  *See Legislative Appropriations Request for Fiscal Years 2024 and 2025*, available at https://www.trs.texas.gov/TRS%20Documents/LAR-2024-2025.pdf.  The fact TRS is authorized to hold property in trust for its beneficiaries, earns money on its investments, and may be authorized to pay expenses from the trust, does not change the fundamental nature of the funds (and agency) as public in nature. *See Clark*, 798 F.2d at 744.

Perhaps most significantly, however, is that Texas Government Code expressly recognizes and preserves TRS's sovereign immunity, including with respect to fund administration and investment activity. Tex. Gov. Code §§ 825.103(f), 825.301(b-1). Consistent with that, TRS may only be sued in state district court sitting in Travis County, Texas. Tex. Gov. Code § 825.103(b-1). TRS also does not have independent litigation authority and is represented by, and subject to, the Texas Office of the Attorney General. Tex. Gov. Code § 825.203.

In short, TRS is created by the Texas Constitution, regulated by Texas law like any other state agency, serves a statewide purpose in managing the retirement funds of public employees, funded by public monies, subject to control by public officers of the State of Texas appointed by the Governor of Texas, subject to legal control by attorney general of Texas, and is expressly recognized as having sovereign immunity by the state. These facts overwhelmingly demonstrate that TRS is an arm of the State of Texas and entitled to have its sovereign immunity respected by the federal courts.

### B.    TRS's sovereign immunity bars third party discovery against it.

Sovereign immunity bars both "suit" and "liability" absent (i) an express waiver from the state or (ii) a "clear statement" of Congressional abrogation pursuant to the Fourteenth Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf Eddy*, 506 U.S. 139 (1993); *see Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) ("Federal courts lack jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.") (internal quotation marks and citation omitted). Neither exists here.

On the former, TRS has not consented to third-party discovery and nothing under Texas law waives sovereign immunity with respect to third-party discovery. On the latter, as recently

stated by the Supreme Court, the "standard for finding a congressional abrogation is stringent."

*Fin. Oversight & Mgmt. Bd. for P.R. v. Centro De Periodismo Investigativo, Inc.*, 143 S. Ct. 1176

(2023). Under what is known as the "clear statement rule," Congress "must make its intent to

abrogate sovereign immunity unmistakably clear in the language of the statute." *Id.* (quoting

*Kimel v. Florida Bd. of Regents*, 528 U.S. 67, 73 (2000)). This test is satisfied only when

(i) Congress uses language in a statute expressly stating that sovereign immunity is removed or

(ii) Congress authorizes a cause of action and expressly names a sovereign as a potential defendant.

*Id.* at 10 (using the example of a cause of action under the Indian Gaming Regulatory Act that

expressly authorized suits against States for failure to negotiate about gaming compacts). That test

cannot be satisfied here, as section 1782 completely lacks any statutory language referring to

sovereigns or sovereign immunity. *See* § 1782 (authorizing discovery only against a "person" and

referring to that person as "him").

Finally, Fifth Circuit law holds that an agency with sovereign immunity cannot be

compelled to produce third-party discovery under Fed. R. Civ. P. 45. *Russell v. Jones*, 49 F.4th

507 (5th Cir. 2022). In *Russell*, the Fifth Circuit held that Rule 45 discovery requests against state

judges were categorically barred by sovereign immunity. As the Fifth Circuit explained, sovereign

immunity entirely pre-empts the use of a "coercive judicial process" against a sovereign because

"states cannot be subjected to *legal proceedings* at law or in equity without their consent." *Id.* at

514 (quoting *The Siren*, 74 U.S. (7 Wall.) 152, 19 S.Ct. 129 (1868)). Sovereign immunity

"prevent[s] the indignity of subjecting a state to the coercive process of judicial tribunals at the

instance of private parties" and thus applies to state agencies as third parties, not just as defendant.

*Id.* at 514-515; *cf. Al Fayed v. Central Intelligence Agency*, 229 F.3d 272, 275 (D.C. 2000) (stating

that "a federal-court subpoena implicates sovereign immunity"). To hold otherwise would be to

allow plaintiffs "to obtain by third-party subpoena what they could not obtain" from the sovereign as a defendant in an ordinary judicial proceeding.  *Id.*

Accordingly, this Court should hold that sovereign immunity bars the TRS Subpoenas and the Application.

## II.     The text of section 1782 does not permit discovery against state agencies.

Separately, and independently, the Court should quash the TRS Subpoenas because section 1782 does not permit discovery against a state agency.  Section 1782, in relevant part, provides:

> The district court of the district in which a **person** resides or is found may order **him** to give **his** testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. …. A **person** may not be compelled to give **his** testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782 (emphasis added).  Section 1782 does not define the term "person."  But under the Dictionary Act, which governs acts of Congress "unless the context indicates otherwise," the term "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals," but does not mention governmental agencies.  1 U.S.C. § 1.  The D.C. Circuit relied upon this reasoning in affirming a district court decision quashing a subpoena under section 1782 on the basis that the statute did not apply to a federal government agency.  *Al Fayed*, 229 F.3d at 273-274 (summarizing case law consistently excluding federal and state agencies from the scope of the term "person").  As the D.C. Circuit explained, the Supreme Court "has repeatedly held that the word 'person' in a statute does not include a sovereign government absent affirmative evidence of such an inclusory intent."  *Id.*  The D.C. Circuit's reasoning in *Al Fayed* applies equally to States.  *Id.* (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) (holding that Michigan was not a "person" under 42 U.S.C. § 1983)).

Holding that a state agency is not a "person" for the purpose of section 1782 is also consistent with the natural reading of the statute. Although the term "person" may be capable of encompassing state agencies, nothing in the context suggests that Congress "intended to go beyond" and "to embrace the broadest possible meaning that the definition of the word can bear." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012) (rejecting the proposition that the term "interpreter" included persons who translate documents, even though it was possible to construe the term in such a way). Here, in enacting section 1782, Congress's failure to reference sovereigns or states in any way, combined with the use of individual pronouns, confirms the presumption that state agencies are excluded from the scope of section 1782. *Id.*

**III.    The requested discovery is duplicative, unduly burdensome, and for harassing purposes.**

> **A.    The TRS Subpoenas should be summarily quashed because B&C has not met its burden of showing the same information is unavailable from its party opponents.**

As a threshold issue, when "the information at issue" is available from "a party to the litigation, any interest Plaintiffs have in obtaining said information from a non-party is far outweighed by the burden imposed." *Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). For example, in *Rembrandt Patent Innovations*, this Court quashed a third-party subpoena because the plaintiffs could obtain the information requested from a party defendant. Although the plaintiffs in *Rembrandt Patent Innovations* argued that the party defendant "has not been forthcoming with such information," that was insufficient to establish a basis for seeking discovery from a third party. This Court held that the plaintiffs could only seek discovery from the third party if they could "establish they are unable to obtain the requested information from the Defendant." *Id.* at *3.

Here, the Application unabashedly seeks information duplicative of what B&C seeks from Lindsay Goldberg in the SDNY Action. Ex. A ¶¶ 6-7. Furthermore, B&C is involved in arbitration with Lindsay Goldberg Europe and therefore could potentially get information in that proceeding too. *See* SDNY Action, ECF No. 24 at 10-11. B&C does not state that any of the information requested could not be obtained from Lindsay Goldberg or Lindsay Goldberg Europe in either proceeding. Indeed, given these circumstances, B&C cannot meet its burden of establishing that the requested information is unavailable from its party opponents. *See Rembrandt Patent Innovations*, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015).

**B.      The TRS Subpoenas should be quashed because they are disproportionate and potentially for harassment purposes.**

Moreover, even if this Court reaches the ordinary balancing test for undue burden, that test overwhelmingly weighs in favor of quashing the TRS Subpoenas. In evaluating a subpoena, the court should consider "the subpoena's benefits and burdens," including the relevance of the information requested, the need for the information, the scope of the request, and the burden of compliance. *Id.* (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). The Court should also consider the Rule 26(b) proportionality standard, which concerns whether the request is:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Garcia v. Prof'l Contract Servs., Inc.*, 2017 WL 187577, at *3 (W.D. Tex. Jan. 17, 2017) (quoting Fed. R. Civ. P. 26(b)(1)). In addition, when applicable, the Court should consider and weigh "relevant public interests." *Hernandez v. Baylor Univ.*, 6:16-CV-69-RP, at *2 (W.D. Tex. Mar. 7, 2017) (citing *Cazorla v. Koch Foods Miss., L.L.C*, 838 F.3d 540, 555 (5th Cir. 2016)).

**Motion to Quash Subpoenas**                                                                                  **13**

For example, in *Garcia*, a defendant in an employment discrimination case served a third-party subpoena seeking ten years' worth of employment records "in hopes of uncovering some evidence that may possibly be used at trial." *Garcia*, 2017 WL 187577, at *3-4 (internal quotation and citation omitted). The court there quashed the subpoena on the basis that, "without some evidence to suggest plaintiff was disciplined by his former employer for conduct similar to the reasons proffered by defendant," the third-party subpoena was "nothing more than a fishing expedition" that was impermissible under the rules. *Id.*

So too here. It is undisputed that B&C's Application (i) seeks information that is redundant with its requests against Lindsay Goldberg in the SDNY Action, (ii) simultaneously seeks the redundant information from a subset of public-entity investors, and (iii) contains no details to substantiate its belief as to why TRS would have the information requested; the need for the information or how it relates to the Austrian criminal investigation; its unavailability from its party opponents; or the inability of the Austrian prosecutor to obtain the information. Moreover, the Application does not even purport to request information for B&C's own use. Rather, it is allegedly for the purpose of being able to provide information to support the Austrian criminal investigation, who may not even be interested in the information. *See generally* Application.

So, taking the Application on its face, B&C is asking:

- four public employee retirement systems to conduct extensive document productions and provide an employee for a deposition;

- at substantial expense to public employee beneficiaries;

- without articulating any basis to suggest TRS (or any of the other public retirement system defendants) has the information requested;

- to obtain information that B&C acknowledges is going to be redundant with information B&C can already obtain from the party opponent in the SDNY Action (or the arbitration);

- so B&C can turn this information over Austrian prosecutors;

- yet B&C does not allege that the Austrian prosecutors are interested in the information or are unable to obtain the information; and

- B&C does not allege any potential benefit for its own interest in requesting the information.

Under the benefits/burdens balancing test and proportionality standard, the outcome appears to be heavily weighted in favor of quashing the TRS Subpoenas.  At best, B&C is seeking to engage in a fishing expedition that would impose large costs, on questionable grounds, for vague benefits related to an Austrian criminal investigation.  *See Garcia*, 2017 WL 187577, at *3-4.  At worst, B&C could be engaging in abuse of the federal judicial system to benefit its own arbitration against Lindsay Goldberg Europe and/or encourage settlement by putting pressure on Lindsay Goldberg's investors and creating publicity for what would otherwise be a confidential arbitration process.  *See* Robert Smith, *Fraud and Embezzlement Allegations at Austrian Group Stun Investors*, Financial Times, Feb. 27, 2022, https://www.ft.com/content/1863ffcd-fd5a-4925-9adc-0e807352a900; Caroline Simson*, PE Firm Says No Subpoena In Fight Over Austrian Packing Co.*, Law 360, Aug. 31, 2022, https://www.law360.com/articles/1526380.  In that light, B&C could also be using a public section 1782 process to connect public retirement systems to allegations of criminal conduct, through the public retirement systems' contractual relationship with an affiliate of the accused entity, undermining public trust in state retirement systems.  Regardless of which

scenario is true, B&C's requests are neither appropriate, proportional, nor in the public interest. The TRS Subpoenas should therefore be quashed entirely under Fed. R. Civ. P. 26.

## IV.   The TRS Subpoenas should be quashed because they are for an impermissible purpose under section 1782.

Section 1782 authorizes, but does not require, this Court to permit discovery.  In exercising this discretion, the Supreme Court has identified four key factors: (i) whether the person from whom discovery is sought is a participant in the foreign proceeding; (ii) the nature and character of the foreign proceeding and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (iii) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (iv) whether the requests are unduly intrusive or burdensome.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

Here, the TRS Subpoenas should be quashed under *Intel* for three reasons.  First, for the reasons stated in the previous section, the requests are unduly burdensome, disproportionate, and not in the public interest.  *See In re Application of XPO Logistics, Inc.*, 2016 WL 3528195, at *3 (S.D.N.Y. June 22, 2016) ("It is undisputed that 28 U.S.C. § 1782 permits denial of an application for discovery on the basis that the requested discovery is unreasonably duplicative."); *In re Fischer Advanced Composite Components AG*, 2008 WL 5210839, at *4-5 (W.D. Wash. Dec. 11, 2008) (denying motion to compel duplicative discovery and awarding fees and costs associated with defending against the application).

Second, B&C's connection to the Austrian criminal investigation is insufficient for section 1782 purposes.  This is not a request from an actual foreign government or tribunal, but merely from a private party who has a right to submit evidence as a complaining party-in-interest.  *See* Application ¶¶ 75-76.

**Motion to Quash Subpoenas**                                                                                    **16**

As a threshold matter, that allegation, without more, is not sufficient to establish the statutory requirement that the evidence will actually be used in the foreign criminal investigation. For example, in *In re Ex Parte Application of CFE International, LLC (CFE International, LLC v. Antaeus Group, LLC)*, 2022 WL 17731821 (W.D. Tex. Aug. 26, 2022), a company filed a section 1782 application seeking information to submit in connection with a Mexican criminal investigation into a competitor. The court, however, held that the applicant had not met the threshold statutory requirement that the evidence would be actually used in the Mexican investigation to initiate a criminal proceeding or that it was reasonably likely a criminal prosecution was within "reasonable contemplation" of being commenced. *Id.* at *5-6. Likewise here, B&C's Application is deficient as to whether the information sought will, in fact, be used by Austrian prosecutors or that criminal proceedings are imminent.

In any event, even if the threshold "use" requirement is met, this Court should still quash the TRS Subpoenas as an improper fishing expedition. The Court need not accept the proposition that the discovery is truly for the Austrian criminal investigation at face value or give it significant weight. For example, in *CFE International*, the court alternatively held that the request was improper because there was no explanation for the request other than the applicant "wants to act as investigator for the Mexican authorities against the entities that it wants the Mexican authorities to charge." *Id.* at *8. "If Mexican authorities want information from Respondents, they have ample means to request such evidence directly." *Id.*

Similarly, as explained in *Fagan v. J.P. Morgan Chase Bank*, 2019 WL 984281 (W.D. Tex. Feb. 28, 2019), a court "should not permit a self-declared victim of a fraudulent scheme to utilize [s]ection 1782 in hopes that it might possibly aid an investigation by [foreign police] at some point in the future. To do so would be to countenance the very kind of 'fishing expedition' district courts

are counseled to guard against." *Id.* at *2. Other courts have also rejected applications for similar reasons. *See, e.g.*, *In re Republic of Turkey*, 2021 WL 3022318, at *4 (N. D. Ill. July 16, 2021) (courts must not "accept [ ] application[s] at face value" as they may "reflect more of a fishing expedition into [a] respondents' financial activities than a legitimate use of section 1782 to further pursuit of criminals."); *In re Escallon*, 323 F. Supp. 3d 552, 559 (S.D.N.Y. 2018) (application failed "to show that the requested discovery [was] 'for use' in foreign proceedings" where the "[p]etitioner's discovery request appear[ed] to be little more than a fishing expedition to acquire documents and information that have at best limited relevance.").

This Court should hold that the TRS Subpoenas are impermissible fishing expeditions, as (i) the criminal investigation appears to be little more than a pre-text to further B&C's private arbitration proceeding against Lindsay Goldberg Europe, in which B&C has a substantial financial interest, and (ii) the breadth of B&C's requested discovery, which date back to January 1, 2016, and includes requests relating to (a) the packaging company that was sold, including financial, employment, and operational details, and (b) details about what Lindsay Goldberg or its affiliates did with money it received from TRS. *See* Exs. D & E. The weakness of this factor is also reinforced by the substantial delay in seeking the discovery against TRS — over one year after B&C initiated the Austrian criminal investigation. *See Bush v. Cardtronics, Inc.*, 2020 WL 6261694, at *3 (S.D. Tex. Oct. 30, 2020) (petitioner's substantial delay supported the court's finding that discovery was not for use in a foreign proceeding); *In re Application of Gov't of Lao People's Democratic Republic v. For an Ord. Pursuant to the United Nations Convention Against Corruption*, 2016 WL 1389764, at *8 (D. N. Mar. I. Apr. 7, 2016) (delayed application indicated discovery was not "for use" in valid foreign proceeding); *In re Application of TJAC Waterloo, LLC*, 2016 WL 1700001, at *2-3 (N.D. Ind. Apr. 27, 2016) (rejecting "untimely and irrelevant"

section 1782 application where applicant engaged in sixteen months of proceedings before requesting discovery, which "may even suggest an improper purpose for" the application); *In re WinNet R CJSC*, 2017 WL 1373918, at *8 (S.D.N.Y. Apr. 13, 2017) (reasoning, as part of the court's analysis of discretionary factors, that applicant's "delay lends credence to the idea that [the] application is an attempt to circumvent the decisions already issued by the Russian courts and/or to harass [respondent].")*; In re Newbrook Shipping Corp.*, 620 F. Supp. 3d 298, 312 (D. Md. 2022) (reasoning, as part of the court's analysis of discretionary factors, that "[a]bsent some material change in circumstances that now creates a demand for this discovery, the afterthought nature of these additional requests suggests they have been added on as 'a fishing expedition or a vehicle for harassment' which would warrant denial of these requests.").

Third, the Application may also be intended to circumvent limitations on evidence gathering in Austria and in the United States.  In Austria, as a self-proclaimed victim, B&C has the right to request that the Austrian prosecutor pursue evidence, but does not have the right to seek criminal discovery itself.  *See* Ex. F (Austrian Code of Criminal Procedure §§ 55, 67).  In the United States, a party cannot use section 1782 discovery in aid of a foreign arbitration proceeding. *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2091 (2022).  This raises serious questions about whether B&C's goal is to circumvent *ZF Auto* to gain a tactical advantage in a foreign arbitration.

Accordingly, the balance of these factors shows that this Court should exercise its discretion and quash the TRS Subpoenas as having been filed for an improper purpose under section 1782.

**V.      In the alternative, compliance with the TRS Subpoenas should be stayed pending resolution of the SDNY Action, or significantly narrowed to only production of non-duplicative documents.**

In other circumstances where the Court has recognized that compliance may involve an undue burden, but postponement would not prejudice the party seeking information, this Court has granted a motion to quash pending the resolution of other proceedings.  *See Hernandez v. Baylor Univ.*, 2017 U.S. Dist. LEXIS 31929, at *2-3 (W.D. Tex. Mar. 7, 2017) (granting a motion to quash a deposition on the basis that a deposition was unduly burdensome and being used "to discover information related to a defamation suit" filed in state court pending further proceedings).  If this Court is not inclined to quash the TRS Subpoenas in entirety, it should grant the motion to quash pending resolution of the SDNY Action.

Furthermore, for avoidance of doubt, to the extent this Court enforces the TRS Subpoenas, the Court should limit production to documents or deposition topics that are specifically identified by B&C as not having been provided to TRS from Lindsay Goldberg or one of its affiliates.

Conclusion

For these reasons, TRS respectfully requests that the Court grant this Motion to Quash and grant any further relief to which TRS may be entitled.

Dated: July 26, 2023

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ *Noah M. Schottenstein*
Noah M. Schottenstein (#24100661)
1900 North Pearl Street, Suite 2200
Dallas, TX 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: noah.schottenstein@us.dlapiper.com

*Attorneys for Teacher Retirement System of Texas*

**Certificate of Conference**

I hereby certify the conference required under LR CV-7(g) was conducted via telephone on July 11, 2023.

/s/ *Noah M. Schottenstein*
Noah M. Schottenstein

**Certificate of Service**

I certify that on July 26, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☒  The CM/ECF system will send notification to the following CM/ECF participant(s):

Timothy Cleveland, tcleveland@clevelandkrist.com
Gerard F. Bifulco, gbifulco@clevelandkrist.com

/s/ *Noah M. Schottenstein*
Noah M. Schottenstein